IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TERRY WAYNE THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV473 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Terry Wayne Thompson, seeks review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

I.  PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 22, 2013, alleging a disability onset date of August 31, 2012. (Tr. 100-01, 200-12.) The applications were denied initially and again upon reconsideration. (*Id.* at 132-36, 142-49.) A hearing was then held before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (*Id.* at 37-69.) On April 13, 2016 the ALJ determined that Plaintiff

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 9.)

was not disabled under the Act. (*Id.* at 18-29.) On March 30, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "[I]n reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] Here, the ALJ first

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several

2

determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 31, 2012. (Tr. 20.) The ALJ next found that Plaintiff suffered from the following severe impairments: depression, obesity, arthropathies, degenerative disc disease, and diabetes. (*Id.* at 20-21.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.* at 21-23.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 23-27.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work

> except the claimant is limited to doing simple routine tasks/instructions, but not at a production rate (such as assembly line work), to making simple work-related decisions, and to sustaining concentration/pace for two-hour segments throughout the duration of a standard eight-hour workday. The undersigned also determines the claimant is unable to climb ladders/scaffolds/ropes and frequently able to climb ramps/stairs, balance, stoop, kneel, crouch, or crawl. The undersigned further concludes the claimant is occasionally able to reach overhead bilaterally.

(*Id.* at 23.) At the fourth step, the ALJ determined that Plaintiff was not capable of performing past relevant work. (*Id.* at 27.) Finally, at step five, the ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform such as counter clerk, page, or usher. (*Id.* at 28-29.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the decision date. (*Id.* at 29.)

---

points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

3

## IV. ISSUES AND ANALYSIS

Plaintiff first argues that the ALJ erred by failing to "analyze the opinion of [certified physician assistant Theresa Williamson] at all . . . ." (Docket Entry 12 at 4-9.)[3] The Court agrees and recommends remand because it cannot tell why the ALJ dismissed evidence that may contradict Plaintiff's RFC, or whether he considered that evidence at all.

### A. The ALJ's Treatment of PAC Williamson's Opinion is Not Susceptible to Judicial Review.

In the present matter, the ALJ found, in pertinent part, that Plaintiff has mild difficulties in social functioning and mild restrictions in activities of daily living. (Tr. 22.) The ALJ further found that Plaintiff could perform a range of light work but that Plaintiff was limited to "doing simple routine tasks/instructions, but not at a production rate (such as assembly line work), to making simple work-related decisions, and to sustaining concentration/pace for two hour segments throughout the duration of a standard eight-hour workday." (*Id.* at 23.) This assessment was based largely on the medical opinion of consultative examiner Alexander Lopez, M.S., which the ALJ gave substantial weight. (*Id.* at 22, 26-27, 447-52.)[4]

Aside from the consultative exam, the evidence of Plaintiff's severe depression came from records of his 2014 and 2015 visits to mental health services providers through Monarch.

---

[3] Plaintiff contends that PAC Williamson was Plaintiff's "treating source." As explained below, physician assistants are not considered "treating sources" whose opinions are entitled to controlling weight.

[4] Mr. Lopez found that Plaintiff "seems capable of relating well with fellow workers and supervisors in a work-related setting. (*Id.* at 26, 452.)

4

(*Id.* at 26, 571-83, 618-58, 695-98.)  At his first visit on April 1, 2014, licensed clinical social worker Peter J. Basone assigned Plaintiff a GAF score of 45 (*id.* at 571-80),[5] indicating serious symptoms or serious impairment in social, occupational, or school functioning, DSM-IV-TR 34 (Am. Psychiatric Ass'n, 4th Ed. 2000).  At his second visit[6] on May 28, 2014, PAC Williamson conducted a mental status exam that yielded generally normal results, although she noted that Plaintiff's mood was sad when he talked about his deceased girlfriend.  (Tr. at 637.) PAC Williamson also completed a medial source statement form ("MSS") on which she checked boxes to signify the presence of "a disturbance of mood accompanied by full or partial depressive syndrome" characterized by a number of symptoms.  (*Id.* at 695.)[7]  She also checked boxes to indicate that Plaintiff had moderate difficulties in maintaining social functioning and moderate restrictions in activities of daily living.  (*Id.* at 697.)  In the "remarks" section, PAC Williamson indicated that her notes were available upon request. (*Id.*)

---

[5] The fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") included a numeric Global Assessment of Functioning ("GAF") scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness."  DSM-IV 32 (Am. Psychiatric Ass'n, 4th Ed. 1994).  Although the more recent edition of the DSM abandoned the use of GAF scoring, the Social Security Administration has instructed ALJs to continue to consider GAF scores as medical opinion evidence in tandem with "all the evidence about a person's functioning."  *Sizemore v. Berryhill*, 878 F.3d 72, 82 (4th Cir. 2017) (quoting *Emrich v. Colvin*, 90 F. Supp. 3d 480, 492 (M.D.N.C. 2015)).

[6] PAC Williamson "treated Plaintiff remotely via what Plaintiff described as a 'teleprompter'." (Docket Entry 12 at 4 n.2.)

[7] PAC Williamson indicated that Plaintiff's depressive syndrome was characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbances with a change in weight, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  (Tr. 695.)

5

The ALJ reviewed Plaintiff's treatment notes from Monarch. He noted that "mental status examinations of the claimant mostly demonstrated a normal appearance, normal motor activity, good insight, normal speech, clear goal-directed thought processes, good judgment, intact cognition, intact orientation, good concentration/attention, a normal flow of thought, and appropriate thought content." (*Id.* at 26, 578, 582, 621, 627, 630, 637, 641, 646-47, 653, 656, 658.) The ALJ also considered the GAF score documented at Plaintiff's first visit, but found it too restrictive. (*Id.* at 26, 580.) The ALJ did not address PAC Williamson's MSS.

Plaintiff now argues that the ALJ's failure to address PAC Williamson's MSS constitutes reversible error. (Docket Entry 12 at 39.) For the reasons that follow, on the specific facts of this case, the Court agrees that remand is appropriate.

Social Security Ruling 06-03p provides that "acceptable medical sources" include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists—but not certified physician assistants or licensed clinical social workers. 2006 WL 2329939 at *2 (2006).[8] These types of health care providers are considered "other sources." *Id.* The Ruling explains that

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable

---

[8] SRR 06-03p was rescinded effective March 27, 2017. For claims filed after March 27, 2017, "the final rules state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." 82 FR 15263-01.

> medical sources" can give us medical opinions. Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.

*Id.* (internal citations omitted) (citing 20 CFR §§ 404.1513(a), 416.913(a), 404.1527(a)(2), (d), 416.927(a)(2), (d)). However, the Ruling also recognizes that

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *3. "[W]hen such opinions may have an effect on the outcome of the case," the ALJ "should explain the weight given to [the] opinion[] . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *6.

Here, the ALJ neither explained the weight given to the MSS nor discussed the MSS in his decision. As explained below, this inadequacy in the ALJ's analysis frustrates meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The Commissioner counters that PAC Williamson's opinion would not affect the outcome of this case and therefore the ALJ was not obligated to weigh it. (Docket Entry 16 at 7-11.) Specifically, the Commissioner notes that (1) the MSS was a checkbox form, which is of limited probative value; (2) the ALJ thoroughly reviewed the Monarch records in detail, and noted that Plaintiff's mental status

7

exams yielded benign results; (3) the MSS contains no functional limitations; and (4) substantial evidence supports the ALJ's conclusions that Plaintiff suffered from only mild limitations in social functioning and mild restrictions in activities of daily living. (*Id.*) If noted by the ALJ, these facts would all constitute good reasons for giving PAC Williamson's MSS little or no weight. Indeed, these considerations may be precisely why the ALJ did not incorporate further social or other limitations into the RFC. But the decision itself leaves the court to guess. *Mascio*, 780 F.3d at 637. PAC Williamson's opinion that Plaintiff has moderate limitations in social functioning, if adopted, would likely indicate that some social limitations in the work setting were necessary. *See Panna v. Colvin*, No. 1:14CV229, 2015 WL 5714403, at *4 (W.D.N.C. Aug. 31, 2015) (unpublished), *report and recommendation adopted*, 2015 WL 5725246 (W.D.N.C. Sept. 29, 2015) (unpublished); *Russell v. Colvin*, No. 1:14-cv-00203, 2015 WL 3766228, at *4-5 (W.D.N.C. June 16, 2015). Thus, the Court cannot say that it could not have affected the outcome of the case where, as here, the RFC includes no social limitations at all. In any event, it is the role of the fact finder, and not that of the Court, to determine how the opinion should be weighed.

More critically, it is entirely unclear whether the ALJ considered PAC Williamson's MSS at all (as required by the Regulations) because the ALJ neither acknowledged nor discussed the MSS in his decision. The Court notes that it is ordinarily entitled to rely on an ALJ's representation that he considered the entire record, absent evidence to the contrary. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005)). Here, however, although the ALJ stated that he considered the entire record (Tr. 18, 20, 23), there is some evidence that the ALJ did not review PAC

8

Williamson's MSS. First, the ALJ twice cites to "Exhibit 20F," which represents the MSS in the administrative record, but appears to have confused Exhibit 19F with Exhibit 20F and cited to Exhibit 20F in error.[9] Second, the ALJ expressly considered a GAF score by a licensed clinical social work even though it came from an "other source," was deemed to be of limited probative value, contained no functional limitation, and indicated more than mild limitations. (*Id.* at 26, 580.) There is no obvious explanation in the ALJ's decision for treating these opinions differently—that is, to explain why he dismissed conflicting evidence from an "other source" in one instance and ignored it entirely in another. Taken together, these facts provide at least some evidence that the ALJ unintentionally overlooked PAC Williamson's MSS.[10]

---

[9] *See* Tr. 25 ("In November of 2014, a head CT scan showed no intracranial hemorrhage, mass legions, or abnormal enhancement [see . . . page 33 of 20F] (Exhibits . . . 20F.").) Exhibit 20F does not contain a page 33. (Tr. 694-98 (Exhibit 20F).) The citation appears to be referring to page 33 of Exhibit 19F. (Tr. 691 ("No intracranial hemorrhage, mass lesions, or abnormal enhancement.").)

[10] The case is distinguishable from those in which an ALJ's failure to expressly consider or weigh an opinion was deemed harmless error. For example, in *Tanner v. Commissioner of Social Security*, 602 F. App'x 95, 100–01 (4th Cir. 2015), the United States Court of Appeals for the Fourth Circuit found that the ALJ's failure to weigh a medical opinion was harmless error because (1) "the RFC assessment reflect[ed] the credible recommendations provided" in the unaddressed MSS," and (2) the ALJ's discussion of the opinion evidence suggested that the ALJ had considered the unaddressed MSS, thus (3) it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability." *Id.*; *see also Sineath v. Colvin*, No. 1:16CV28, 2016 WL 4224051, at *6–7 (M.D.N.C. Aug. 9, 2016) (unpublished), *report and recommendation adopted*, slip op. (M.D.N.C. Sept. 13, 2016) (unpublished) (finding that a physician's findings and opinions on issues not reserved to the Commissioner were clearly considered by the ALJ and did not suggest greater limitations than the those incorporated in the RFC). Here, although it may be unlikely that remand will change the Commissioner's finding, the Court cannot conclude that the ALJ's failure to address PAC Williamson's MSS is harmless error. This is so primarily because, as explained above, there is some evidence that the ALJ failed even to consider PAC Williamson's MSS. In addition, unlike in *Tanner* or *Sineath*, the RFC assessment does not reflect any limitations to address difficulties in social functioning.

9

In sum, it is not clear whether the ALJ considered PAC Williamson's opinion, and if he did, why he dismissed it or otherwise declined to incorporate restrictions consistent with it. None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. The Court declines consideration of the additional issues raised by Plaintiff at this time. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision of no preclusive effect, as it is vacated and the new hearing is conducted).

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the ALJ's decision is not susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's motion for judgment (Docket Entry 11) should be **GRANTED** and Defendant's motion for judgment on the pleadings (Docket Entry 15) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
June 21, 2018